TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00020-CV






In the Matter of A. D. V.







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-17,959, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







 On October 26, 1998, the district court sitting as a juvenile court found that
juvenile appellant A.D.V. engaged in delinquent conduct by committing the offense of burglary. 
See Tex. Penal Code Ann. § 30.02 (West Supp. 2000); Tex. Fam. Code Ann. § 51.03 (West
Supp. 2000). The court rendered an initial disposition placing A.D.V. on probation. After
A.D.V. violated the terms of that probation, the court vacated its original disposition and held a
second disposition proceeding, after which it committed A.D.V. to the Texas Youth Commission
(TYC). In five issues, A.D.V. appeals. We will affirm.


BACKGROUND


 In its petition, the State alleged that on or about March 28, 1998, A.D.V., then
fourteen years of age, knowingly and intentionally entered a habitation without the effective
consent of its owner and attempted to commit and committed theft therein. See Tex. Penal Code
Ann. § 30.02. A.D.V. admitted committing the acts alleged, and the juvenile court adjudged that
A.D.V. had engaged in delinquent conduct.

 The court received evidence that A.D.V. had suffered head trauma in April 1997
and had been diagnosed with Tourette's Syndrome, attention-deficit hyperactivity disorder, and
borderline intellectual functioning or mild mental retardation. At the initial disposition
proceeding, A.D.V.'s probation officer recommended that A.D.V. be placed on probation
following treatment at a mental health facility to address his head injury, medication, and
emotional, educational, and substance-abuse needs.

 In its disposition order of October 28, the court placed A.D.V. on probation for
one year beginning with ninety days' treatment at a mental health facility in Plainview, Texas. 
The court orally warned A.D.V. that if he violated the terms of his probation or failed to complete
his treatment, the court would revoke probation and commit him to TYC.

 Within a few days, A.D.V. left the Plainview facility without having been
discharged. The juvenile court vacated its original disposition, held a second disposition hearing,
and rendered a new disposition order committing A.D.V. to TYC. A.D.V. appeals the
adjudication and disposition.


DISCUSSION


Failure to order mental health examination

 In his first issue, A.D.V. argues that the court had a duty to order an examination
to determine A.D.V.'s mental capacity. Different sections of the Family Code govern the exact
procedure to be used in the juvenile court depending on whether the issue is a juvenile's
competence to proceed, capacity to be held responsible for his conduct, or need for court-ordered
mental health services. (1) All of these sections, however, use very similar language regarding the
court's duty and state that, unless either party or the court files a motion alleging that a juvenile
is mentally ill or retarded, the juvenile court has no duty to order examination or inquiry into the
matter. See Tex. Fam. Code Ann. §§ 55.01-.05 (West 1996 & Supp. 1999). (2) Therefore, we
believe the same reasoning applies in evaluating the court's actions regardless of the nature of the
specific inquiry involved.

 In this case, neither party filed a motion alleging that A.D.V.'s medical,
psychological, or emotional history affected his capacity. (3) Therefore, the sole issue is whether
the juvenile court was under a duty to act on its own motion given the facts of this case.

 Although classified as civil proceedings, juvenile cases are quasi-criminal in nature. 
See In re M.A.F., 966 S.W.2d 448, 450 (Tex. 1998). Because of the serious nature of juvenile
proceedings and the possibility that a juvenile may be deprived of liberty, this Court looks to
criminal cases for guidance on many issues in juvenile cases. See In re M.S., 940 S.W.2d 789,
791-92 (Tex. App.--Austin 1995, no writ). In the adult criminal context, the Court of Criminal
Appeals has held that a court is required to make an inquiry regarding an accused's competency
sua sponte only if there is evidence before the court that raises a bona fide doubt in the judge's
mind as to an accused's competency to stand trial. See Collier v. State, 959 S.W.2d 621, 625
(Tex. Crim. App. 1997), cert. denied, __ U.S. __, 142 L.Ed.2d 276 (1998). Generally a bona
fide doubt is raised "only if the evidence indicates recent severe mental illness, at least moderate
mental retardation, or truly bizarre acts by the defendant." Id. (citing Mata v. State, 632 S.W.2d
355, 359 (Tex. Crim. App. 1982)). Because the evidence does not indicate that A.D.V. exhibited
any of these conditions so as to raise a bona fide doubt of his competency, the court was under
no duty to move for an inquiry into A.D.V.'s capacity or need for mental health services. (4)

 Having concluded that the juvenile court was not required to conduct an inquiry
regarding A.D.V.'s capacity, we need not address A.D.V.'s argument regarding what the inquiry
should have involved. We overrule A.D.V.'s first issue.


Failure to admonish A.D.V.

 In his second issue, A.D.V. argues that the court failed to explain to him the
possible consequences of the proceedings against him under section 54.03(b)(3) of the Family
Code. See Tex. Fam. Code Ann. § 54.03(b) (West Supp. 2000). In particular, A.D.V. seems
to argue that because this was his second felony adjudication, the court should have warned him
that, if he were to commit a third felony, the petition in that case could be referred to a grand jury
for consideration, creating a possibility that A.D.V. could be assessed a determinate sentence with
eventual transfer to a Texas Department of Corrections facility. See id. § 53.045 (West Supp.
2000).

 A.D.V. has failed to preserve this issue for review. In an uncontested adjudication
such as this, section 54.03(i) provides that, in order to preserve the issue of inadequate
explanation for review, the juvenile's attorney must place the issue before the court and obtain a
ruling before the child pleads to the petition or agrees to a stipulation of evidence. See id. §
54.03(i); Tex. R. App. P. 33.1; In re C.C., No. 3-98-651-CV, slip op. at 9-10 (Tex. App.--Austin
Dec. 2, 1999, no pet. h.). Because A.D.V. did not follow the necessary steps to preserve this
issue, we overrule it.


Determinate commitment to Texas Youth Commission

 In his third issue, A.D.V. complains that the court orally committed him to the
Texas Youth Commission for a determinate period in violation of section 54.04 of the Family
Code. See Tex. Fam. Code Ann.§ 54.04 (West Supp. 2000). That section provides that a court
may generally commit a juvenile to TYC only for an indeterminate period. See id. § 54.04(d)(2).

 To support his argument, A.D.V. relies on In re A.N.M. See 542 S.W.2d 916
(Tex. Civ. App.--Dallas 1976, no writ). In that case, the court of appeals held that an oral order
of commitment for a determinate period was error. See id. at 920. The court did not quote the
language employed by the trial court but merely stated, "the statement of facts reveals that the
court orally ordered the minor to be committed to the Texas Youth Council for a period of one
year." Id. Because that case does not elaborate on what it considered to be an order by the trial
court, it offers little guidance here.

 A.D.V. alleges that the following interchange constituted an oral order:


THE RESPONDENT: How long is the time, sir?


THE COURT: A burglary is 12 months. I think 12 months for a burglary. 



(Emphasis added.). 

 The court's statement was not phrased as an order; it merely constituted the court's
estimation of how long TYC might detain A.D.V. The court's written order specifically stated
that A.D.V.'s commitment to TYC was for an "indeterminate period." The above-quoted
exchange in no way contradicts that order. We overrule A.D.V.'s third issue.


Court's reasons for committing A.D.V. to TYC

 In his fourth issue, A.D.V. complains that the court's reasons for committing
A.D.V. to TYC are not sufficiently specific and that the reasons are unsupported by evidence in
the record. Under the Family Code, a court must state specific reasons for its disposition. See
Tex. Fam. Code Ann. § 54.04(f). 

 In its order, the court stated that it was "considering the record, evidence, and
argument of counsel" and proceeded to set out its reasons for committing A.D.V. to TYC. The
order stated, "The Respondent will not accept parental supervision and has demonstrated a
disregard for all authority." The order also noted that, "the local resources of this Court are not
adequate to meet such needs or accomplish the necessary protection of the public." In addition,
the order recited the findings that a juvenile court must make in every disposition. See id.
§ 54.04(c). 

 The statutory recitals, by themselves, do not provide a specific reason for the
court's ruling. See In re J.T.H., 779 S.W.2d 954, 959 (Tex. App.--Austin 1989, no writ). But
these recitals were supplemented by the above-quoted findings and other information in the record
that was incorporated by reference. Taken together, these items constitute sufficiently specific
reasons for the court's disposition of appellant.

 A.D.V. also argues that the court's reasons are unsupported by legally sufficient
evidence in the record. (5) To determine legal sufficiency in a disposition, we apply the criminal
standard of review and look at all the evidence in the light most favorable to the verdict and ask
whether a rational trier of fact could have made the disputed finding beyond a reasonable doubt. 
See In re C.C., slip op. at 7; In re M.S., 940 S.W.2d at 791-92, 792 n.2. 

 Specifically A.D.V. contends that the court's statement that A.D.V. will not accept
parental supervision and has no respect for any authority is unsupported by the record. A.D.V.
also argues that there is no evidence supporting the court's finding that A.D.V.'s home lacks the
level of support and supervision needed to meet the conditions of probation. 

 The record clearly contains some evidence to support the court's reasons. The court
summary, which was admitted into evidence without objection and which the court stated it had
reviewed, states that A.D.V. resisted any attempt his mother made at discipline, becoming angry
and verbally abusive. His probation officer also testified that A.D.V. did not follow rules while
in detention and as a result was subject to more restrictions at various points. In addition, the
record indicates that A.D.V. violated the terms of his previous probation; the record also contains
uncontroverted evidence that A.D.V. violated the original disposition order by leaving the
Plainview facility without having been discharged. A.D.V. argues that the State focused on
A.D.V.'s problems at school and flight from the Plainview facility, neither of which involve
A.D.V.'s respect for parental authority. However, both the fights at school--a violation of school
rules--and the flight from Plainview--a violation of a court order--do support the court's statement
that A.D.V. "has demonstrated a disregard for all authority." And the court could reasonably
infer from the fact that A.D.V. violated the terms of his probation that there was inadequate
support and supervision for him to meet its conditions. 

 A.D.V. also argues that the court's reasons in the disposition order are contradicted
by the judge's remarks on the record and the disposition provided for in the vacated order. 
A.D.V. claims that the statement that he disregards all authority is contradicted by the court's on-the-record remark that A.D.V. was well-behaved in detention following his return to Austin. 
Although this is some evidence that A.D.V. can respect authority, the court's reason did not state
that A.D.V. could not follow authority; instead, the court stated that A.D.V. disregarded or chose
not to follow authority. In addition, A.D.V. argues that the court received no evidence to support
its change in position from the original disposition order in which the court stated that the best
interests of society and A.D.V. would be served by A.D.V. being placed on probation with his
mother. On the contrary, the fact that A.D.V. violated the terms of the original order is itself
evidence that could convince the court to reassess its prior decision. In addition, prior to
rendering the original disposition, the court warned A.D.V. that if he violated probation he would
be sent to TYC, and so his argument that the court's disposition was somehow unexpected is
disingenuous.

 Viewing the evidence as a whole in the light most favorable to the verdict, we hold
that a rational trier of fact could have made the disputed findings beyond a reasonable doubt. We
overrule A.D.V.'s fourth issue.


Ineffective assistance of counsel

 In his fifth issue, A.D.V. claims that his trial counsel was ineffective in: (1) failing
to move for an appropriate mental health examination and hearing; (2) failing to object to the
court's improper explanation under section 54.03(b) of the Family Code; and (3) failing to object
to the fact that all of the evidence offered by the State at the disposition hearing was hearsay.

 Because of the quasi-criminal nature of juvenile proceedings, we will look to
criminal cases for the standards applicable in evaluating an ineffective assistance claim in a
juvenile case. To evaluate this claim, we first must examine whether counsel's conduct failed to
meet an objective standard for reasonable performance and then determine whether that failure
deprived the appellant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 687, (1984);
Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). We presume that counsel
provided adequate assistance and made all the significant decisions in the exercise of reasonable
professional judgment. See Strickland, 466 U.S. at 690. Counsel is allowed wide latitude within
reasonable professional standards to make tactical decisions. See id. at 689. We look at the
totality of the representation. See Ex parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim. App.
1985); Mayhue v. State, 969 S.W.2d 503, 510 (Tex. App.--Austin 1998, no pet.). The
representation need not be free of error. See Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim.
App. 1984); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Finally, the client must show a reasonable probability that, but for counsel's errors, the result of
the proceedings would have been different. See id.

 A.D.V.'s burden of showing counsel was ineffective becomes more difficult in the
absence of an evidentiary hearing dedicated to the issue of counsel's effectiveness. "In most
instances, the record on direct appeal is inadequate to develop an ineffective assistance claim." 
Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); see Oldham v. State, 977 S.W.2d
354, 363 (Tex. Crim. App. 1998); Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); (6) Ex parte Duffy, 607
S.W.2d 507, 513 (Tex. Crim. App. 1980); Mayhue v. State, 969 S.W.2d at 511; see also Osorio
v. State, 994 S.W.2d 249, 253 (Tex. App.--Houston [14th Dist.] 1999, no pet.). The court held
in Duffy and reiterated in Oldham that, "where the alleged derelictions primarily are errors of
omission de hors the record rather than commission revealed in the trial record, collateral attack
may be the vehicle by which a thorough and detailed examination of alleged ineffectiveness may
be developed and spread upon a record." Duffy, 607 S.W.2d 513; see Oldham, 977 S.W.2d at
363. In the 1998 Jackson case, the Court of Criminal Appeals reversed the judgment that counsel
was ineffective for failing to file a motion to suppress the only evidence that defendant possessed
cocaine; the Court of Criminal Appeals held that defendant's claim failed because he had not
proven by a preponderance of the evidence that the cocaine should have been suppressed. 
Jackson, 973 S.W.2d at 956-57. In the 1994 Jackson case, the Court of Criminal Appeals
reversed the judgment that counsel was ineffective for failing to move to strike for cause a jury
panelist who said that a recent burglary of his home probably would affect his impartiality in a
robbery trial; the Court of Criminal Appeals reversed because the record was silent regarding
defense counsel's reason for not moving to strike the panelist. Jackson, 877 S.W.2d at 771.

 The deficiencies A.D.V. alleges against his trial counsel all comprise omissions
rather than commissions. A.D.V. criticizes his trial counsel for failing to make certain motions
and objections, but the record contains no showing why trial counsel chose not to act. Appellate
counsel did not move for a new trial or request a hearing thereon to develop a record relating to
trial counsel's strategy.

 We conclude that A.D.V. has failed to demonstrate on this record that the trial
counsel rendered ineffective assistance. The silent record gives no guidance, and the Court of
Criminal Appeals instructs us not to speculate about counsel's motives. See Jackson, 877 S.W.2d
at 771; see also Jackson, 973 S.W.2d at 957. This proscription, coupled with the presumption
of competence, requires us to overrule point five.


CONCLUSION


 We hold that because neither party moved for a hearing and the evidence did not
raise a bona fide doubt as to A.D.V.'s competence, A.D.V. has failed to show that the juvenile
court erred in not holding a hearing on the issue of A.D.V.'s competence. We also hold that
A.D.V. failed to preserve the issue of whether he received an adequate explanation under section
54.03 of the Family Code, and that the juvenile court did not order A.D.V. to a determinate
commitment at TYC in violation of section 54.04 of the Family Code. Finally, we hold that the
juvenile court gave sufficiently specific reasons for its decision to commit A.D.V. to TYC and
that A.D.V. has failed to present us with an adequately developed record to show that he was
deprived of a fair trial by receiving ineffective assistance of counsel. Having overruled all of
A.D.V.'s issues on appeal, we affirm the disposition order of the juvenile court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Affirmed

Filed: December 23, 1999

Do Not Publish
1. The legislature recently made substantial revisions to Family Code Chapter 55 governing
proceedings for juveniles with mental illness or mental retardation. See Act of June 19, 1999,
76th Leg., ch 1477 § 14, eff. Sept. 1, 1999. Because the legislature explicitly stated that "the
change in law made by this Act applies only to conduct that occurs after the effective date of this
Act," we will the law as it existed prior to the revisions, and all references to Chapter 55 will be
to the former statute. Id. § 39(a).
2. Section 55.01 states that the juvenile court may order that a juvenile be examined by a
physician, psychiatrist, or psychologist. See Tex. Fam. Code Ann. § 55.01(a) (West 1996). 
Sections 55.04 and 55.05 provide that the court must order examination under 55.01 if either party
or the court makes a motion alleging lack of fitness or of responsibility. See id. § 55.04(b),
.05(b) (West 1996). Section 55.02 provides that a court must order mental health service if a child
is alleged by motion of the court or either party to be mentally ill or if the child is found to be
unfit or not responsible for his conduct. See id. § 55.02 (West 1996). Section 55.03 provides
that if a child is found or alleged unfit or not responsible due to mental retardation, the court must
order a determination of mental retardation. See id. § 55.03 (West 1996 & Supp. 1999). In sum,
the juvenile court has a duty to conduct an inquiry into capacity only if there is a motion alleging
incapacity.
3. A.D.V. cites us to T.P.S. v. State for guidance in determining whether mental health
services were needed. See 590 S.W.2d 946 (Tex. Civ. App.--Dallas 1979, writ ref'd n.r.e.). 
Because the juvenile in that case moved for a competency inquiry, it provides no guidance on the
issue of the court's duty to make an inquiry on its own motion.
4. Although the juvenile court ordered that A.D.V. be treated at a mental health facility, that
order was vacated and is not before us. 
5. Although A.D.V. does not make an explicit legal sufficiency argument or cite us to a
standard of review, statements in his brief that the reasons are "not supported" and "unsupported"
lead us to believe that this is the claim he is making.
6. The Jackson cases involve different defendants. 



ons. A.D.V. criticizes his trial counsel for failing to make certain motions
and objections, but the record contains no showing why trial counsel chose not to act. Appellate
counsel did not move for a new trial or request a hearing thereon to develop a record relating to
trial counsel's strategy.

 We conclude that A.D.V. has failed to demonstrate on this record that the trial
counsel rendered ineffective assistance. The silent record gives no guidance, and the Court of
Criminal Appeals instructs us not to speculate about counsel's motives. See Jackson, 877 S.W.2d
at 771; see also Jackson, 973 S.W.2d at 957. This proscription, coupled with the presumption
of competence, requires us to overrule point five.


CONCLUSION


 We hold that because neither party moved for a hearing and the evidence did not
raise a bona fide doubt as to A.D.V.'s competence, A.D.V. has failed to show that the juvenile
court erred in not holding a hearing on the issue of A.D.V.'s competence. We also hold that
A.D.V. failed to preserve the issue of whether he received an adequate explanation under section
54.03 of the Family Code, and that the juvenile court did not order A.D.V. to a determinate
commitment at TYC in violation of section 54.04 of the Family Code. Finally, we hold that the
juvenile court gave sufficiently specific reasons for its decision to commit A.D.V. to TYC and
that A.D.V. has failed to present us with an adequately developed record to show that he was
deprived of a fair trial by receiving ineffective assistance of counsel. Having overruled all of
A.D.V.'s issues on appeal, we affirm the disposition order of the juvenile court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and Yeakel

Affirmed

Filed: December 23, 1999

Do Not Publish
1. The legislature recently made substantial revisions to Family Code Chapter 55 governing
proceedings for juveniles with mental illness or mental retardation. See Act of June 19, 1999,
76th Leg., ch 1477 § 14, eff. Sept. 1, 1999. Because the legislature explicitly stated that "the
change in law made by this Act applies only to conduct that occurs after the effective date of this
Act," we will the law as it existed prior to the revisions, and all references to Chapter 55 will be
to the former statute. Id. § 39(a).
2. Section 55.01 states that the juvenile court may order that a juvenile be examined by a
physician, psychiatrist, or psychologist. See Tex. Fam. Code Ann. § 55.01(a) (West 1996). 
Sections 55.04 and 55.05 provide that the court must order examination under 55.01 if either party
or the court makes a motion alleging lack of fitness or of responsibility. See id. § 55.04(b),
.05(b) (West 1996). Section 55.02 provides that a court must order mental health service if a child
is alleged by motion of the court or either